0941

SOUTHERN BANK & TRUST COMPANY, Appellant v. Ronald HARLEY, Gary Beaver, and Donald R. Knauss, Respondents.

(356 S. E. (2d) 410)

Court of Appeals

*O. G. Calhoun* and *Robert C. Wilson, Jr.*, both of *Haynsworth, Perry, Bryant, Marion & Johnstone*, of Greenville, *for appellant.*

*George E. Mullen*, of *McKay & Mullen*, and *James M.*

*Herring* and *Curtis Coltrane*, both of *Herring & Meyer, P.A.,*
Hilton Head Island, *for respondents.*

Heard Feb. 16, 1987.

Decided April 27, 1987.

BELL, Judge:

Southern Bank & Trust Company sued Ronald Harley,
Gary Beaver, and Donald R. Knauss on continuing guaranty
agreements signed by them to guarantee repayment of a
loan to 46 New Orleans Investment Corporation. The circuit
court denied Southern recovery of a deficiency of $79,221.77
and entered judgment for $12,583.19. Southern appeals. We
reverse and remand for entry of judgment for the full
amount of the deficiency plus interest.

On September 26, 1983, the three Guarantors — Harley,
Beaver, and Knauss — signed continuing guaranty agree-
ments to induce Southern to extend credit to 46 New Or-
leans. Each agreement unconditionally guaranteed

> the punctual payment when due, with such interest as
> may accrue thereon ..., of all debts and obligations of
> the Borrower [46 New Orleans] ..., whether ... secured
> or unsecured, ... provided, however, the liability of the
> undersigned hereunder shall not exceed at any one time
> a total of Seven hundred, seventy five thousand Dollars
> ($775,000.00).

The agreements go on to state liability on the guaranty is
direct and immediate and not conditional or contingent upon
Southern's pursuit of any remedies it may have against
other securities or liens available to it.

On May 1, 1984, 46 New Orleans executed a promissory
note to Southern for $775,000.00. The note was secured by a
mortgage on certain real estate as well as the continuing
guaranty agreements of the Guarantors. 46 New Orleans
defaulted on the note on July 2, 1984. In subsequent proceed-
ings to foreclose the mortgage, the court fixed the amount
due on the note at $790,566.84, plus $15,000.00 in attorney's
fees and costs. The foreclosure sale netted $712,416.81, which
was applied to the debt, and Knauss paid an additional
$50,000.00, reducing the total indebtedness to $79,221.77.

Southern then brought suit against the Guarantors for this deficiency.

The circuit court concluded the guaranty agreements place a "cap" of $775,000.00 on each Guarantor's liability. The court then held:

> [T]he guarantor is entitled to the benefit of whatever the security will bring and ... thereafter, the guarantor is responsible for any deficiency ... from the amount that was collected from the sale and the cap of $775,000, ... that would be what the guarantor would be responsible for.

Accordingly, the court entered judgment for $12,583.19, i.e., the difference between $775,000.00 and the $762,416.81 Southern had already applied to reduce the debt.

The guaranty agreements provide the Guarantors will pay "all debts and obligations of the Borrower" when due, subject to a maximum liability on the guaranty of $775,000.00. The outstanding indebtedness in this case was $79,221.77. Since this figure is well within the maximum amount of the guaranty, the Guarantors are liable, under the terms of the agreements, to pay the full amount.

The Guarantors rely on the principle that a guarantor of a secured debt is entitled to have the proceeds of the collateral applied to the liquidation of the debt if the creditor forecloses the security before proceeding on the guaranty. *See, e.g., Conoley v. Distileria Serralles, Inc.*, 48 N. Y. S. (2d) 11 (N. Y. City Ct. 1944), *aff'd*, 270 App. Div. 1003, 63 N. Y. S. (2d) 827 (mem.), *appeal denied*, 271 App. Div. 783, 67 N. Y. S. (2d) 719 (1946). The purpose of this rule is to avoid a double recovery by the creditor. The rule does not avail the Guarantors in this case, however.

As required by the rule, Southern did apply the proceeds of the foreclosure to reduce the indebtedness. Nevertheless, there remains an unpaid balance of $79,221.77. Requiring the Guarantors to pay this sum will not impose on them a liability greater than they agreed to assume. Neither will it result in a double recovery to Southern. By the very terms of the guaranty agreements, the security thereof is cumulative to any other security Southern may be entitled to pursue. Payment of the deficiency by the Guarantors gives Southern

the benefit of the additional and cumulative security represented by the guaranty agreements. This is a benefit Southern bargained for. If the Guarantors pay the full amount of the deficiency, the debt is not being paid twice; it is merely being paid in full.

The circuit court's ruling was a misapplication of the law. The rule states the guarantor is entitled to have the proceeds of any other security applied to reduce the *debt*. The circuit court, however, applied the proceeds, not to reduce the debt, but to reduce the contractual limit of liability under the guaranty agreements. In effect, this rewrote the terms of the contract between Southern and the Guarantors. It also deprived Southern of the additional security it had bargained for. Under a correct application of the rule, in determining the guarantor's liability, the amount recovered by the creditor was to be subtracted from the total amount owed by the debtor, not from the contractual limit on the guaranty. *Ralston-Purina Co. v. Bertie*, 541 F. (2d) 1363 (9th Cir. 1976); *Woodruff v. Exchange National Bank of Tampa*, 392 So. (2d) 285 (Fla. Dist. Ct. App. 1980).

For the reasons stated, we reverse and remand for entry of judgment for the full amount of the deficiency plus interest.

Reversed and remanded.

GARDNER and SHAW, JJ., concur.